DUVOLL and others *vs.* WILSON and others, ex'rs of Duvoll.

Although natural love and affection, between near relatives, is a sufficient con-
sideration to support a deed, or an executed contract, yet it will not render
obligatory a mere *covenant* or promise, or executory agreement.

Accordingly, where a father, in consideration of natural love and affection,
executed a deed to his grandchildren, which contained a covenant that the
grantor was seised of a good and indefeasible estate of inheritance, in the
premises conveyed, free and clear of all incumbrance, and it turned out that
the premises were, at the date of the deed, subject to a mortgage executed
by a previous owner; *Held* that the grantees could not maintain an action
against the executors of the grantor, to compel them to pay off that mort-
gage, out of the assets of their testator.

MOTION to set aside report of a referee.    William Duvoll, on
the 11th of March, 1846, made his will, by which, among other
provisions, he devised to the plaintiffs, his grandchildren, a cer-
tain piece of land containing about sixty acres, in fee, subject to
an interest which by the same devise was vested in the son of
the testator and father of the plaintiffs, during his life.    On the
22d day of January, 1847, the testator executed, under his hand
and seal, to the plaintiffs, a deed of conveyance of sixty-five acres,
being the sixty acres devised, and five acres in addition thereto,
in consideration as expressed in the deed, of the sum of $5 paid
and of the testator's affection for the said plaintiffs.    This deed
contained a covenant that the grantor, at the time of its execu-
tion, was seised of a good and indefeasible estate of inheritance
in the premises conveyed, free and clear of all incumbrance.    On
the 22d day of February, 1847, the testator died, and on the 3d
day of April thereafter the will was duly proved by the defend-
ants, the executors named therein.    The premises so conveyed
to the plaintiffs, at the time of the execution of the deed as well
as of the death of the testator, were subject to a mortgage exe-
cuted by a previous owner, upon which there remained due and
unpaid the sum of $405 of principal, besides interest.    This suit
was brought by the plaintiffs to compel the executors to pay off

Duvoll *v.* Wilson.

this mortgage out of the assets of the deceased, being in the nature of a bill in equity for a specific performance of the covenants in the deed. The case was referred to a sole referee, who reported in favor of the plaintiffs; and the defendants moved to set aside the report.

*By the Court,* SELDEN, J.   It is conceded that the pecuniary consideration named in the deed was nominal merely, and that nothing was in fact paid. The position taken by the defendants is this : that while natural love and affection between near relatives is a sufficient consideration to support a deed, or an executed contract, yet that it will not render obligatory a mere covenant or promise, or executory agreement. That to support the latter, in equity, as well as at law, a valuable consideration is necessary.

This raises a question of considerable nicety, and one which can not, perhaps, be considered even at this day as very well settled. The point seems to have been first distinctly presented in the year 1835, in the case of *Ellis* v. *Nimmo,* (*Lloyd & Gould,* 333.) That was a case of an agreement by a father, without consideration other than mere natural affection, to make a provision for a married daughter. The father declining to carry out the agreement, a bill was filed, and Sugden, Lord Chancellor of Ireland, decreed a specific performance of the agreement, on the ground that it was founded upon a *meritorious* consideration. The authority of this case, however, was questioned by the vice chancellor, in a case which arose two years afterwards, (*see Holloway* v. *Headington,* 8 *Sim.* 324;) and in the still later case of *Jeffreys* v. *Jeffreys,* decided in 1841, (1 *Craig & Phil.* 138,) it was expressly overruled by Lord Chancellor Cottenham. This last case was identical in principle with the one before us. There a father had conveyed, by voluntary settlement, certain freehold estates to trustees for the benefit of his daughters, and by the *same instrument* had covenanted to surrender certain copyhold estates, subject to the same trusts. The father died, and his widow having been admitted to some of the copyholds, a bill was filed to compel a specific execution of the trusts. The chancel-

Duvoll *v.* Wilson.

lor decreed that the settlement was valid as to the freeholds, but void as to the copyholds, for want of a consideration. This decision, if law, fully sustains the position of the defendants here, who admit the validity of the deed as a conveyance, but deny the obligation of the covenants which it contains.

We have then these two cases of *Ellis* v. *Nimmo* and *Jeffreys* v. *Jeffreys*, one decided by Lord Chancellor Sugden in 1835, and the other by Lord Cottenham in 1841, in direct opposition to each other   If there are no other considerations bearing upon the relative weight of these decisions, I suppose the last one should be followed. But we are not to confine our attention to their relation in point of time alone, but should look to see whether any other reasons can be found for following one rather than the other.   It is to be observed that *Ellis* v. *Nimmo* stands alone, but *Jeffreys* v. *Jeffreys* receives some support from the decision of the vice chancellor in *Holloway* v. *Headington*, before cited; while the force of *Ellis* v. *Nimmo* is impaired by what is stated by the vice chancellor as to the decision of the successor of Lord Sugden in the same case.

The case of *Dillon* v. *Coppin*, (4 *Myl. & Craig*, 647,) may also be considered as to some extent going to confirm the principle of *Jeffreys* v. *Jeffreys*.   There a father, by deed, had conveyed certain freehold estates for the benefit of his daughter, and by the same deed had also transferred certain East India stock and shares in an insurance company.   By the East India charter, stock could only be transferred by an entry in the books, in a particular form; and the shares in the insurance company were also, by the articles of the company, to be transferred at the office of the company only.   After the death of the father, a bill was filed by some of his children to set aside the deed, so far as it purported to convey the East India and insurance stock. On the argument of that case the question here raised was fully discussed; the counsel for the plaintiff taking the ground that the deed amounted to no more than an executory agreement to convey, which, being without consideration, other than what is termed a meritorious consideration, could not therefore be enforced; while on the part of the defendants it was contended that being made in

favor of children and grandchildren, the moral obligation to provide for them was a sufficient consideration to support it. The chancellor held that the deed, so far as the stocks were concerned, was wholly inoperative and void, thus virtually, in this case as well as in that of *Jeffreys* v. *Jeffreys*, overruling the case of *Ellis* v. *Nimmo*.

It may be remarked, also, that the counsel for the plaintiff in *Dillon* v. *Coppin*, stated without its being denied on the other side, that the decision of Chancellor Sugden, in *Ellis* v. *Nimmo*, was substantially overruled by Lord Plunket, his immediate successor, upon a rehearing of the same cause; thus confirming what was said by the vice chancellor in *Holloway* v. *Headington*.

There are, therefore, the three later cases to which I have referred standing opposed to that of *Ellis* v. *Nimmo*. Still it is to be observed that the decisions in these three cases are very brief, while that of Lord Chancellor Sugden goes into an elaborate course of reasoning to support the conclusion. If this reasoning, therefore, should be found upon investigation to be entirely satisfactory, it might justify the courts at this day in following that case. I shall not attempt a minute examination or analysis of the argument of the learned chancellor, but shall simply advert to some considerations which seem to me to be suggested by it.

The principal analogies referred to by the chancellor to support his decision, are the practice of courts of equity, prior to the statute of uses, to execute covenants to stand seised, founded upon a meritorious consideration only, and to aid the defective execution of powers, and defective surrenders of copyhold estates, where there was a like consideration. It is worthy of remark that all these examples relate to the transfer of estates. Now what is termed a meritorious consideration, (which it is unnecessary here to define,) having always been held sufficient, even at law, to support an actual conveyance, all that was done by equity in cases of the defective execution of powers, and defective surrenders, was to carry into effect a conveyance imperfectly executed. The intention of the parties being clear, the conside-

Duvoll *v.* Wilson.

ration sufficient, and the necessary act to effectuate the intent having been attempted, but not perfectly performed, equity comes in and perfects the conveyance. This is no more than the exercise of the ordinary power of the court to relieve against mistakes or accidental omissions. The difference is manifest between such cases and interfering to give effect to a mere executory contract, where nothing has been done. The distinction between agreements executed wholly or partially, and those resting *in fieri*, runs through all the cases on this and analogous subjects. The example of covenants to stand seised, is the only one, as it seems to me, which bears very directly upon the point in question. There the court did, it is true, interfere to enforce what prior to the statute of uses might be regarded as to some extent an executory contract. At that day uses and trusts were special favorites of the court of chancery. They enforced trusts not only then but since, although created in favor of entire strangers and without consideration, provided nothing remained to be done to perfect the trust. (*Ellison* v. *Ellison*, 6 *Vesey*, 656.) Uses, also, which bore a strong analogy to trusts, shared with them the favor of the court. But what was a covenant to stand seised to the use of another? It was simply a device by which, originally, the whole beneficial interest in an estate could be conveyed without transferring the legal title. The shadow only remained in the covenantor; the whole substance was in the cestui que use. What was this but a substantial conveyance of the estate, even before the statute of uses, which rendered it an actual conveyance? And why should not the same consideration which would support the one support the other? It strikes me that the court of chancery might well be justified in so holding, without taking the broad ground that natural affection alone, or the moral obligation to provide for a wife or children, constitutes a sufficient consideration to support a mere executory promise or covenant. If the rule was as broad as that, it is certainly surprising that no case had ever arisen, prior to that of *Ellis* v. *Nimmo*, in which it had been applied to any species of executory contract, except that of a covenant to stand seised to uses.

Duvoll *v.* Wilson.

The case of *Beard* v. *Nutthall*, (1 *Verm. R.* 497,) relied upon by the referee in this case, does not involve the principle. It proceeded upon the ground that an agreement under hand and seal, estopped the party from setting up a want of consideration. It is not put at all upon the ground of a meritorious consideration, and the only importance attached to the circumstance of the plaintiff being the wife of the obligee was, that it rendered her act, in surrendering the bond, nugatory.

The remark of Sir Joseph Jekyll, in 3 *P. Wms.* 222, also cited by the referee, referred merely to the case of a trust; and I have already shown that courts of equity would execute a trust, when once created, in favor of a mere volunteer.

Upon the whole, it seems to me that the case of *Ellis* v. *Nimmo* is without any direct authority to support it, and that the reasoning of the learned chancellor in that case is by no means conclusive.

The case of *Bunn* v. *Winthrop*, cited from 1 *John. Ch. R.* 329, has no bearing upon this case, except to confirm the distinction between acts consummated and mere executory agreements.

I am aware that the late Assistant Vice Chancellor Sandford, in the case of *Hayes* v. *Kershow*, (1 *Sand. Ch. R.* 258,) assumes that covenants or agreements founded not upon a valuable but a *meritorious* consideration merely will be specifically enforced in equity. But that point was not involved in the case; and although the case of *Ellis* v. *Nimmo* is cited in a note to this part of the opinion, the cases of *Holloway* v. *Headington, Dillon* v. *Copping*, and *Jeffreys* v. *Jeffreys*, are none of them referred to. Judge Story seems to consider these cases last named as settling the question; (2 *Eq. Juris.* §§ 793, *b.* 987,) and such examination as I have been able to give the subject has brought me to the same conclusion.

The cases of *Fink* v. *Cox*, (18 *John.* 145,) and *Parish* v. *Stone*, (14 *Pick.* 198,) show conclusively that the covenant can not be sustained as a *donatio causa mortis.*

The report of the referee must be set aside.