## FRANCIS MORRIS, APPELLANT, *v.* MARGARET A. WARD, RESPONDENT.

*Will—Statute of Descents—R. S. Part II. Ch. 2.*

The estate comes to the intestate "on the part of the mother," where it was a gift by the grandfather to the mother for life, and remainder to her surviving issue, of which the intestate was one.

In such case, the mother dying, leaving two children her only surviving issue, on the death of one of the issue the estate descends to the father for life, with remainder to the survivor of the children.

PARKER, J.—This action was brought in the Supreme Court, to obtain an adjudication declaring the Plaintiff's estate in certain city lots, in the city of New York, which he holds with the Defendant, to be an estate in fee, instead of an estate for the life of the Defendant's father, Samuel Ward, as claimed by the Defendant.

The Plaintiff, through several conveyances, has obtained the interest which Samuel Ward had in the premises; and what that interest is, whether a moiety *for the life* of Samuel Ward, or *in fee*, is the principal question in the case.

The action was referred, and the referee held that the estate of Samuel Ward was only an undivided moiety in the lands in question for his life, and dismissed the complaint, and directed judgment for the Defendant, against the Plaintiff, for costs.

The material facts established in the case by the findings of the referee, and the admissions in the pleadings, are as follows:

On the 25th day of January, 1838, the said Samuel Ward married Emily Astor, the daughter of William B. Astor, and grand-daughter of John Jacob Astor, late of the city of New York, deceased. On the 16th day of February, 1838, the said John Jacob Astor, by deed of that date, for the consideration therein expressed, of natural love and affection to said Emily, and of one dollar, did give and grant unto her (besides certain bonds and mortgages), thirty-two lots of land, therein and in the complaint described, with the hereditaments

and appurtenances thereof, to have and to hold the same to the said Emily during her life, unless she or her husband should attempt any sale thereof, or make or allow any incumbrance thereon, in which case her estate was to cease, and the same was given to trustees, to receive the rents and profits thereof, and apply them to her use during her life; and by the same deed, and for the same consideration, the said John Jacob Astor did give and grant the said lands and their appurtenances, from and after the death of the said Emily, unto her surviving issue, and their heirs and assigns forever, and did declare that the provisions therein made were to be deemed an advancement to the said Emily, out of his estate, and to be so accounted under his will, and that the said lands and bonds and mortgages were, for such purpose, valued at $200,000.

This sum of $200,000 the will of the said John Jacob Astor, published December 30, 1846, charged upon the residuary portion of his estate, therein given to the said William B. Astor, as a sum to be settled on the said Emily and her issue, and in regard to which, by a codicil to said will, made and published January 19, 1848, he made the following provision : "I direct that the said portions of $200,000, for each of the daughters of my son William B. Astor, shall be settled on them on their respectively attaining the age of twenty-one years, or their marriage."

On the 18th day of February, 1841, the said Emily died, leaving her surviving her husband, the said Samuel Ward, and two children, the issue of said marriage, viz., Margaret Astor Ward, the Defendant, and William Samuel Ward, now deceased. On the 23d day of February, 1841, the said William Samuel Ward died intestate, leaving no descendant, but leaving him surviving his father, the said Samuel Ward, and his sister, the said Defendant, and no other heir-at-law.

The said Samuel Ward, and Margaret A. Ward, the Defendant, as proprietors of the parcel of land, consisting of thirty-two lots, described and conveyed by the said deed of settlement, had the right of pre-emption to take out a grant from the Mayor, Aldermen, and Commonalty of the city of New York, of the land under

the waters of the Hudson river, between the said lands, and the westerly exterior line of said city.

In July, 1844, the Mayor, &c., of the city of New York passed an ordinance that a bulkhead and sufficient return bulkheads be built on the Hudson River, along the westerly exterior line of said city, opposite said thirty-two lots, and that the space between the bulkhead so to be built and said lots, be filled up with good and wholesome earth.

Whereupon the said Samuel Ward and the said William B. Astor, who were the guardians of the person and estate of the said Defendant, applied to the Court of Chancery, and obtained authority, as such guardians, to make the necessary expenditures to obtain the grant, and fill up the space aforesaid, representing in their petition that the said lots of lands adjacent to which the said lands under water lay, belonged to the Defendant in fee, subject to a life estate in the equal undivided one-half part thereof, which belonged to the said Samuel Ward for and during his natural life. And the said Samuel Ward, in said petition, offered to pay the proportion of such expense which the value of his life estate in said thirty-two lots bore to the value of the whole estate in the same.

The order thereupon made directed the said guardians to obtain such grant to the Defendant and said Samuel Ward, conveying to them, respectively, the same estates in said lands under water as they were represented in said petition to have in the thirty-two lots aforesaid. And also directed the said expenses to be borne by the Defendant and said Samuel Ward, in the proportion of their said respective interests in said lots.

On or about the 26th day of August, 1847, the Mayor, Aldermen, and Commonalty of the said city, by deed of that date, granted to the said Samuel Ward and the said Defendant the said lands under water, above mentioned and described in the complaint, to have and to hold to them and their legal representatives in manner following, to wit: the one equal undivided moiety or half-part to said Samuel Ward for and during his natural life, and the other equal undivided moiety or half-part, together

with the remainder in the undivided half-part held by the said Samuel Ward, for life, as aforesaid, unto the said Margaret A. Ward, and her legal representatives, to and for her and their own proper use and benefit forever.

By the construction of bulkheads, and the filling in of the said land under water, so granted by the Mayor, &c., as aforesaid, thirty-two additional lots were acquired; but the said Samuel Ward was charged, and he paid, on account of the cost and expense of obtaining said grant, and the making of said bulkheads, and filling in of the said land so granted, only such portion thereof as the value of an estate in an undivided moiety thereof for his life bore to the value of an estate in fee in the whole property.

The referee found that the deed of settlement dated on the 16th day of February was not made in pursuance of any promise by said John Jacob Astor, to the said Emily Astor and Samuel Ward, or either of them, before their marriage, nor in pursuance or execution of any ante-nuptial agreement of said John Jacob Astor with them, or either of them, in regard to such settlement.

He also found as a fact, that the lands in the complaint mentioned, to which the parties in this suit claim title, derived under a descent from William Samuel Ward, deceased, the brother of the Defendant, came to the said intestate, William Samuel Ward, on the part of his mother, the said Emily; that the said lands came to him as one of the issues of the said Emily under said post-nuptial settlement, made by the said John Jacob Astor, and *as a gift* from him to the said issue of his grand-daughter, without any other consideration than that expressed in said deed.

It also appears that in September, 1847, Samuel Ward mortgaged *all his interest* in said sixty-four lots to August Belmont; that the mortgage was subsequently foreclosed, and all of Samuel Ward's estate in said lots became vested in said Belmont, who conveyed the same to Francis Griffin, now deceased, who devised the same to his wife, Mary Griffin. That in 1852, this Defendant brought an action against Samuel Ward and the said Mary Griffin, as executrix, &c., of Francis Griffin, deceased, to obtain payment of the share of certain assessments and taxes which had

been imposed upon said sixty-four lots by the Corporation of the city of New York, belonging to the owner of the estate, which the said Samuel Ward had therein to pay, and which had been wholly paid by this Defendant; in which action judgment was obtained, whereby it was adjudged that an " estate in the undivided half of said lots, for the natural life of the said Samuel Ward, formerly belonged to Samuel Ward, and now belongs to the said Mary Griffin, as executrix, &c., of Francis Griffin, deceased, . . . . . and that the Plaintiff (Margaret A. Ward) has an estate in fee-simple in the said lands, subject to the said life estate;" and by which judgment it was further adjudged that the " estate or interest which formerly belonged to the said Samuel Ward, and which now belongs to the said Mary Griffin, as executrix as aforesaid . . . . . is indebted and liable to the Plaintiff" in several sums therein specified, which are declared to be a lien upon said estate, or interest, and upon default of payment of said several sums by said Samuel Ward and Mary Griffin, executrix as aforesaid, within twenty days, it was further adjudged that the said estate, right, title, and interest of the said Samuel Ward, and the said Mary Griffin, as executrix as aforesaid, and of each of them, of, in, and to, and out of said parcel of land, be sold by a referee therein named, who should execute to the purchaser a good and sufficient deed therefor, which should vest in said purchaser a good and valid title in the equal undivided half-part of said lots, for and during the natural life of said Samuel Ward; that default being made in the payment of said sums of money, the said referee, in pursuance of said judgment, sold and conveyed the said estate of Mary Griffin, as executrix as aforesaid, and Samuel Ward therein, to Joseph W. Revere, and that Revere, on the 28th of July, 1853, conveyed to the Plaintiff. That the Plaintiff, in March, 1854, by action against the Defendant, in which he claimed to be the owner of an undivided moiety of the premises for the life of said Samuel Ward, and alleged that the Defendant was the owner of an estate in fee of the said premises, subject to the said estate of the Plaintiff therein, obtained a partition of said premises in accordance with such claim and allegation.

Also that, afterward, on the 19th of June, 1855, the Plaintiff obtained a conveyance from Mary Griffin of all her estate, right, title, and interest in and to the said premises.

In regard to the thirty-two lots described and conveyed in the deed of 16th of February, 1838, the Plaintiff claims and insists, that under the statute of descents, Samuel Ward inherited from his son, William Samuel Ward, deceased, the estate which came to said son on the death of his mother, which was an estate in fee in an undivided moiety of said lots, the same estate in the other undivided moiety being in the Defendant.

And that the said Samuel Ward, and the Defendant, having equal interests in said lots, were entitled to receive, by virtue of such equal interests, from the Mayor, &c., of the city of New York, the same interests respectively, in the lands under water conveyed to them, as they had in the original lots, and that the Defendant must be deemed to hold the remainder in the undivided half conveyed to said Samuel for his life, in trust for him and his assigns.

As to the thirty-two original lots, the quantity of Samuel Ward's estate therein depends upon the construction of the deed of settlement under the statute of descents (1 R. S., Part 2, chap. 2).

His son, William Samuel Ward, on the death of his mother, took, as is conceded, an estate in fee in one undivided moiety of those lots. On his death, his father inherited the whole of the estate of his intestate son therein, " unless the inheritance went to the father for life, and the reversion to the Defendant."

The inquiry then is, whether the inheritance came to the intestate on the part of his mother ; for I regard the expression in § 5 of this statute, " the inheritance descending on her part," as referring to the same contingency as the expression in the same section, " unless the inheritance came to the intestate on the part of his mother." The construction of the section shows that such must have been the idea. The language is as follows : " In case an intestate shall die without lawful descendants, and leaving a father, then the inheritance shall go to such father, unless the inheritance came to the intestate on the part of the mother, and

such mother be living; but if such mother be dead, the inheritance descending on her part shall go to the father for life, and the remainder to the brothers and sisters of the intestate," &c.

The contrast or opposition expressed by " but," is to the case stated in the previous clause of the sentence; that is, although the provision contained in the first clause, that the inheritance shall go to the father, is not to apply when the inheritance came to the intestate on the part of his mother, and she is living, yet if she is dead, the inheritance mentioned in the first clause is not construed to be the same as that in the second, the force of the contrast expressed by the connective *but* is lost, and the evident scope and unity of the sentence, shown by the force of expression adopted, entirely disregarded. I am constrained, therefore, to adopt such construction, and to proceed at once to the inquiry whether the inheritance came to the intestate " on the part of his mother."

By section 29 of the same chapter, it is provided that the expression used in said chapter, " when the estate shall have come to the intestate on the part of the father," or "mother," as the case may be, it shall be construed to include every case where the inheritance shall have come to the intestate by devise, *gift*, or descent from the parent referred to, or from *any relative of the blood of such parent.*

William Samuel Ward took his estate in the thirty-two lots, under and by virtue of the following clause: " And, in consideration, as aforesaid, I give and grant all and singular the said lands and their appurtenances, from and after the death of the said Emily, unto her surviving issue and their heirs and assigns forever." The consideration, as aforesaid, here mentioned is, " the natural love and affection which I (John Jacob Astor) have to my said granddaughter Emily, and of one dollar to me paid by her, and by William B. Astor, John Ward, and Daniel Lord, Jr.," the trustees.

The estate did not come to the intestate on the part of his mother, unless it came to him by *gift* from her grandfather, John Jacob Astor, through the said deed. Was the conveyance a deed

of gift, and did the intestate take the estate as a donee, is the question.

It is insisted, on the part of the Plaintiff, that inasmuch as the consideration of the conveyance was natural love and affection, *and* one dollar, the intestate was a purchaser for a valuable consideration, and not a donee of the estate—that the statute applies only to cases of *pure gifts*, where there is no valuable consideration whatever, and, consequently, that the inheritance did not come to the intestate by gift, within the meaning of the statute.

It is entirely correct, I think, to say that the statute applies only to cases of *pure* gift, and not to cases of mixed consideration, partly valuable, and partly *good*, consisting of natural love and affection.

Such mixed consideration cannot be divided so as to cause the estate to descend partly in one direction, and partly in the other, according to such division.

The valuable consideration, however small, is sufficient to support the conveyance in its whole extent, and reaches, and must be applied to every part of its subject-matter ; so that if in this case the one dollar mentioned in the deed of settlement *is* a part of the *actual* consideration, it results in making the intestate a purchaser for value, and not a donee ; and though the estate came to him from a relative of the blood of his mother, not coming by devise, gift, or descent, it descends to his heirs generally, without reference to such blood—and under section one of the chapter above referred to, goes to the father in fee.

It is insisted on the part of the Respondent, that the one dollar mentioned in the deed as consideration is *nominal*, and not real, nor intended as consideration in fact—that the intent in that respect is a question of fact, made so by statute, and therefore that this Court is bound, by the finding of the referee, that the lands came to the said William Samuel Ward as a *gift*.

The statute to which the Respondent refers is as follows : " In the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate or interest in lands, it shall be the duty of the courts of justice to carry into

effect the intent of the parties, so far as such intent can be col-
lected from the whole instrument, and is consistent with the rules
of law " (1 R. S. 748, § 2, 1st ed.).

The conclusion as to the intent of the parties to an instrument
in writing, to be collected from the whole instrument, is rather
one of law than of fact—a duty for the Court, and not for the
jury (St. John *v.* Bumpstead, 17 Barb. 100; Levy *v.* Gadsley, 3
Cranch, 180).

We are not, therefore, concluded by the finding of the referee
above mentioned, but must determine for ourselves the question
whether the one dollar forms any part of the actual consideration
of the deed.

It is contended on the part of the Respondent, that the conclud-
ing clause in the deed, "these provisions are to be deemed an
advancement to the said Emily out of my estate, and to be so ac-
counted under my will, and the said lands and bonds and mort-
gages are, for such purpose, valued at $200,000," show the convey-
ance to be a gift, being substituted for the legacy, which would
have been undeniably a gift.

There is much strength in this position of the Respondent, and
I do not think it is answered by saying that, after exhausting the
value of the legacy, there may have been in the property con-
veyed something more which might have been the subject of pur-
chase.

The language of the grantor in the last clause of the deed is,
"*these provisions are to be deemed an advancement.*" This
characterizes the whole estate and interest conveyed, and leaves
no room for the proposition that there was anything conveyed
which could be the subject of a purchase.

It was wholly and entirely an advancement, and, if an advance-
ment, necessarily a gift. The declaration is not, as suggested by
the Appellant's counsel, that it shall be taken as an advancement
*to the amount* of $200,000.

If it were, the construction claimed for it might prevail. But
"these provisions," that is, the estate, interest, and property con-
veyed and transferred, "are to be deemed an *advancement* to the

said Emily *out of my estate*," and, as such, are to be " valued at
$200,000." It is manifest that there is no portion of " these provi-
sions " excepted from the category of advancement, and that the
entire property transferred by the deed is a substitution for the
legacy.

In addition to the declaration above mentioned, there are in the
deed various restrictions and limitations tending to show that the
conveyance was intended as a mere gift, and not a sale for a quid
pro quo ; such as the restriction against the disposing or the encum-
bering, by the said Emily, of her life estate in the property, and
the provision that, in any such event, the estate granted to her
should determine, and should thereafter vest in trustees, to receive
the rents and profits, and apply them to her use; the limitation
of the power of giving by will to her husband not exceeding the
one-fourth part of the present property transferred to her; the
limitation upon the estate given to her surviving issue, contained
in the power authorizing her, with the concurrence of the trustees
named, to make leases of any of the lands thereby conveyed for a
term of twenty-one years, containing covenants for the payment
for valuable erections thereon, which should bind the lands and
the parties in remainder in respect of their estate. Also author-
izing her, with the like concurrence, to sell or mortgage not more
than one-third in value of said lands, and the same to convey in
fee-simple the moneys proceeding from said sales, to be applied
to the improvement of the residue of said lands, by erections
of a permanent nature. These restrictions and limitations tend
strongly to show the donative character of the conveyance—that it
was intended, not as a sale for a valuable consideration, but as a
voluntary provision out of the estate of the grantor for his grand-
daughter Emily and her issue—a mere substitute for the legacy
which he had provided for her in his will.

In collecting the intent of the grantor from the whole instru-
ment, therefore, I think the referee was warranted in the conclusion
at which he arrived, that such intent was to convey the whole
property, which passed by the deed to his granddaughter and her
surviving issue, as a gift ; and hence that the one dollar mentioned

in the conveyance was a mere *nominal*, and not an actual portion of the consideration.

It was held by the learned Assistant Vice-Chancellor Sandford, in Hayes *v.* Kershaw (1 Sandf. Ch. R. 265), that "the nominal consideration of one dollar (like that of five shillings in England), which the Courts may know judicially is not usually paid, is not such a valuable consideration as will support a bargain and sale." In Duvoll *v.* Wilson, Ex'r (9 Barb. 487), it was held by the Supreme Court, sitting in the seventh judicial district, Judge Selden delivering the opinion of the Court, that when the Defendant's testator had given a deed to the Plaintiffs, his grandchildren, expressed to be in consideration of $5 paid and the testator's affection for the Plaintiffs, and in which deed was a covenant against incumbrances, that, inasmuch as the deed was to be deemed a voluntary one, for natural love and affection merely, the action brought to compel the Defendant to pay off a mortgage would not lie, for want of a sufficient consideration to support the covenant.

Although it is not necessary, and I am not disposed to go so far as these cases have gone, and hold that the presumption in cases of such slight money consideration, connected with the consideration of natural love and affection, is, that the money consideration is merely formal, nor to go out of the deed itself for evidence that it was not paid, nor intended to be, yet I think it is competent, when the whole instrument shows it to have been intended as a *nominal* consideration merely, to give effect to such proof and to the intention which it indicates.

The practice to insert a pecuniary consideration of small amount, in gratuitous conveyances, which nominal sum is not generally paid, is, as the learned counsel for the Appellant admits, so general that it may almost be pronounced universal. In some cases it is necessary to the validity of the conveyance, as when the gratuity is to a person not of the blood of the donor. In other cases it is unnecessary, as when the donee is a near blood relative of the donor. In either case, if the conveyance itself shows the intent of the party making it to be a gratuitous transfer of the

property, the statute requires that such intent shall prevail over any technical rule of construction. In the case at bar the Appellant's counsel invokes the rule that the grantor in a deed is presumed to know the legal meaning and effect of the legal terms and forms used therein, and from it insists upon the inference that the grantor in this deed inserted the one dollar consideration to indicate his intention that the grant should not be considered wholly a gift. It would be very difficult to overcome this obstacle to the construction which I have adopted, if the answer was not found in the deed itself. But when the grantor himself in effect declares, that he did not use the formula as showing an actual consideration and indicating a purchase, we are compelled to disregard the technical rule of construction, and take the fact as thus declared to us. As was remarked by the learned Judge Duer in Langdon *v.* Astor's Ex'rs (3 Duer, 555): "Rules of construction may still, with great propriety, be invoked to aid in the discovery of a doubtful intention; but the declared will of the legislature will be set aside and nullified if they shall be permitted to defeat that which the Court, judging from the whole instrument, is satisfied corresponds with the mind of the parties."

If, then, "the provisions" in the deed of settlement—the *entire* property thereby conveyed, is an advancement out of the estate of the grantor—a mere substitute for the legacy contained in the will, I do not understand the learned counsel for the Appellant to deny—so far as the question arises out of the terms of the deed, and irrespective of the question of a marriage consideration—that it must be deemed, within the meaning of the statute, a gift to William Samuel Ward, the propositus.

The Appellant's counsel insist, however, that still it is not a gift, because, independently of the money consideration expressed in the deed, there was another actual valuable consideration for the conveyance, to wit, that of marriage.

That is not a consideration expressed in the deed, and consequently, whether it existed and operated as a consideration, is a question of fact arising aliunde.

The referee has passed upon that question of fact, finding ex-

plicitly that there was no such consideration, and that finding, as the case stands before us, is conclusive.

From the conclusion at which I have arrived, that the property came to William Samuel Ward by gift from his mother's grandfather; it necessarily follows that the estate which Samuel Ward took in the undivided moiety of the property in question was an estate for his life only; and that the Plaintiff, by the conveyances made to him, acquired no greater estate therein.

In view of this conclusion, it is unnecessary to consider the question of estoppel discussed upon the argument arising under the various judicial proceedings which have been had respecting these lands.

The judgment appealed from should be affirmed, with costs.

All concur.

Affirmed.

JJ. Bockes and Porter not voting.

JOEL TIFFANY,
State Reporter.