OLIVE ESTHER BUCKLIN, Respondent, *v.* GEORGE R. BUCKLIN, *et al.*, Appellants.

Where the rights of creditors do not stand in the way, it is perfectly lawful for a parent to make provision by gift, present or testament, for his children.

A voluntary executory gift will not always be enforced by the courts; but an executed one is as valid as though based upon a full pecuniary consideration.

A mortgage is an executed conditional transfer of the estate mortgaged. In judgment of law, any conveyance which would be sufficient to pass the title to the purchaser, conveys it to the mortgagee.

A mortgage is not to be regarded as a disposition of land by deed within the meaning of the article of the Revised Statutes respecting uses and trusts.

A trust of personalty is not within the statutes of uses and trusts, and may be created for any purpose not forbidden by law.

The statute of limitations does not commence running against an infant *cestui que trust*, although her right to foreclose the mortgage accrue to her more than ten years before she becomes of age.

SUIT to foreclose a mortgage. The plaintiff is the daughter of William Bucklin and Esther his wife, both now deceased. The mortgage was contained in an instrument executed by the plaintiff's father, William Bucklin, dated September 22, 1836, and which was duly acknowledged and recorded on the same day. It recites that Esther Bucklin, the wife of said William, had theretofore, by one Vedder Green as her next friend, filed a bill of complaint against her said husband in the Court of Chancery, charging him, among other things, with the exercise of such cruel and inhuman treatment toward her, as to render it unsafe and improper for her to cohabit and live with him, and prays for a decree of separation from bed and board, and for a separate maintenance out of his property, and that she might retain the care and custody of the plaintiff, their infant daughter (then about three years of age), and recites also that an injunction had been issued, restraining the father from taking possession of or molesting the child. It further recited that, with a view of staying further proceedings on the part of his wife, William Bucklin had agreed to make a suitable and proper provision for the support and maintenance of his said wife and daughter, separate and apart from himself, and had also

agreed to convey to his daughter, real estate of a certain value (stating an agreement to the same effect as that subsequently mentioned in the instrument), and that the said injunction should remain in full force and effect, and that the said suit in chancery should not be discharged or discontinued, but that proceedings therein should for the present be discontinued. The instrument then proceeds as follows: "Now, for the purpose of securing the performance by the said William, of the aforesaid agreement and covenant on his part to be performed, this indenture witnesseth, that the said William Bucklin, in consideration of the premises, and also in consideration of the sum of one dollar paid to the said William by the said Vedder Green, the receipt of which sum is hereby confessed and acknowledged, hath granted bargained, sold, aliened and confirmed, and doth hereby grant, bargain, sell, alien, convey and confirm unto the said Vedder Green, and to his heirs and assigns forever, the following described lands and tenements to wit: [describing the mortgaged premises, being a farm in Herkimer County] being the farm now occupied and possessed by said William Bucklin; to have and to hold the same to the said Vedder Green, his heirs and assigns forever. Provided always, and these presents are upon this express condition, if the said William Bucklin shall, within the period of six months from this date, convey to Olive Esther Bucklin, the infant daughter of said William and Esther Bucklin, real estate of the value of one thousand dollars; which real estate shall consist of a dwelling house, garden and other lands, and shall be conveyed by a good and sufficient warranty deed, and shall at the time of said conveyance be free and clear from all incumbrance; and if the said William shall further suffer and permit the said Esther Bucklin, during the joint lives of said William and Esther, to occupy, possess and enjoy the said real estate free from the molestation and hindrance of said William for the benefit of said Esther, the daughter aforesaid; and if the said William, during the joint lives of said William and Esther, shall pay to the said Esther the sum of three hundred dollars annually, to be paid on the first

day of the months of February and August in each year, reckoning from the first day of August last; and if the said William Bucklin shall suffer and permit the said Esther Bucklin, during the joint lives of said William and Esther, to have the care, control, custody, management and education of said Olive Esther Bucklin, without any interference on the part of said William; and if the said William shall also, within one week from this date, deliver to said Esther, at the dwelling-house of said William, all the household furniture now in his possession, which said Esther carried to said house when she went there to reside, or at any time afterward; and shall also at the same time deliver to said Esther such other household furniture as the said William or said Esther may choose to select; and if the said William shall within the period of one month from this date deliver to the said Esther one horse, one set of harness, and one pleasure carriage or pleasure wagon, which horse, wagon or carriage and and harness shall be of the value of one hundred and twenty dollars; and shall also within the period last aforesaid deliver to the said Esther one good cow; all which household furniture, horse, wagon or carriage, harness and cow shall be under the exclusive control and management of said Esther during the joint lives of said William and Esther, and shall remain the property of said Esther if she shall survive the said William, then in such case, this indenture and every part of the same shall be void. And it is hereby declared that this mortgage is given to the said Vedder Green in trust for the benefit of said Esther Bucklin and her infant daughter the said child Olive Esther Bucklin. And in case the above conditions on the part of said William expressed to be performed and kept, or any of them shall be broken; and it shall at any time hereafter be necessary to enforce this mortgage, the amount that shall be recovered on said mortgage shall be secured for the benefit of the said Esther and her infant daughter or the survivor of them." The complaint alleged a waiver of that part of the agreement which called for the conveyance of land, but admitted the delivery of the personal property, and the payment of the annuity to her

mother during her life. It alleged that the trustee, Green, died in Oswego county in the year 1841, and that she, the plaintiff, had been recently appointed by the Supreme Court, to execute the trust which had been vested in Green, and to bring the present action.

The defendant answered admitting the execution of the instrument, but setting up that it was without consideration, and that William and Esther Bucklin, during their lives, had settled their difficulties, became reconciled to each other, and again cohabited together. They claimed to be owners of the mortgaged premises under William Bucklin, and alleged that no claim had been made against them by either the trustee, or by the plaintiff. They relied upon the statute of limitations in the following manner: "And for a further answer to the compaint, the said defendant says that no part of the said cause of action, accrued within twenty years next before this action, and that the defendants plead the statute of limitations to said claim of the said plaintiff."

The case was tried before Mr. Justice BACON without a jury. His conclusions of fact affirmed the execution of the instrument set out in the complaint. They further stated the death of the plaintiff's mother in the year 1843, and of her father in the year 1844; the death of Green, the trustee, in 1841, and the appointment of the plaintiff as trustee by the Supreme Court in 1857. They negatived the alleged reconciliation of William Bucklin and his wife or that they ever cohabited together after the execution of the mortgage, though it was stated that they resided in the same house for a short time. The judge found a breach of the obligation to convey land to the plaintiff, and that the defendants were in possession of the mortgaged premises. The evidence showed them to be worth over $9,000.

As conclusions of law the judge held that the mortgage was fulfilled and that the plaintiff was entitled to a judgment of foreclosure and sale, and to have paid to her out of the proceeds $1,000, and interest from the 22d of March, 1837, the expiration of the time fixed for the mortgagees to perform.

After an affirmance of the judgment at a General Term the defendants brought this appeal.

*F. Kernan*, for the appellants.

*J. H. Reynolds*, for the respondents.

DENIO, Ch. J.   The mortgage, so far as it is now sought to be enforced, was created, among other objects, to secure to the plaintiff, then an infant of tender age, a portion of her father's property, to aid in her maintenance during her infancy, and to furnish her with a small independent estate in real property.   The differences which had arisen between her parents presented the occasion for this gift; but its validity did not depend upon the merits of that controversy, nor yet upon the legal effect of the agreement for a separation between her father and mother, nor upon the legality of the provisions made by the former for the latter.   The contract, so far as it relates to that provision, has either been performed or it is now incapable of performance.   The party entitled to its benefits has been long dead, and it does not appear that she left any representative capable of enforcing any of its stipulations which were not performed at her death.   Moreover, this suit was not brought to recover such an interest.   But the plaintiff survives, and is entitled to the settlement attempted to be made in her favor, provided it was legally valid when made, and provided her rights have not been lost by lapse of time.

1. Where the rights of creditors do not stand in the way, and there appears not to have been any in this case, it is perfectly lawful for a parent to made such provision out of his estate for a child or children, by present, gift, or by testament, as he may think proper.   There are cases in which a voluntary executory gift will not be enforced by the courts; but an executed one is as valid as though based upon a full pecuniary consideration.

A mortgage is an executed conditional transfer of the real estate mortgaged.   In judgment of law, any conveyance which would be sufficient to pass the title to a purchaser

conveys it to the mortgagee. The instrument executed by William Bucklin to Vedder Green would be a perfect deed of bargain and sale but for the condition by which it was to become void upon performance of the agreement. It expresses a pecuniary consideration which, though nominal, is as adequate to waive a use as though it were the full value of the land ; and though it may not have been paid, the defendant is estopped by his deed from denying its payment. By the Revised Statutes it is denominated a grant, but for all substantial purposes it has the effect of a deed of bargain and sale. (1 R. S., 738, 739, §§ 137, 138, 142.) At common law, and before the jurisdiction of courts of equity to relieve against forfeitures had been established, this deed would have vested in the trustee an estate in fee simple defeasible only by the performance of the conditions. This is of course a technical view of the nature of a mortgage.

By applying to the transaction the equitable doctrines of the courts of equity, now also recognized to a great extent by the courts of law and by modern statutes, the mortgage is simply a security for the payment of the money it was given to secure, and the mortgagor continues to own the land, while the mortgagee's interest is that of a creditor simply. But the defendants' position is formal also. They insist that courts of equity will not decree the performance of a voluntary executory agreement even where the subject is a portion intended for a child or other relative, and authorities are referred to to sustain that position. (*Duval* v. *Wilson*, 9 Barb., 487 and cases cited, but see *Souverbye* v. *Arden*, 1 Johns. Ch., 240, 266, and cases referred to by Chancellor KENT.) If the settlement be an executed one like a deed or mortgage, the doctrine relied on has no application. The title of the mortgaged premises is transferred by legal conveyance. The mortgagor retains an equity of redemption equivalent, for many purposes, to a general ownership of the land, but yet in point of form, an equity. The mortgagor may, it is true come into a court of equity to enforce his mortgage, as the mortgagee must in order to redeem The reason why a mortgagee must resort to equity is not because

the mortgage, is an executory transaction, and requires the aid of a court of chancery, to compel a specific performance. On non-performance of the conditions the mortgage is forfeited at law, but the equity of redemption remains in the mortgagor or his representatives. No prospective language of the parties which can be written is strong enough to produce the forfeiture of that equity, which can only be extinguished by a decree, or an equivalent proceeding, under a positive statute. This rule is expressed by the phrase " once a mortgage always a mortgage." The mortgagee cannot destroy this equity except by a suit in chancery or a statute foreclosure, namely, he could bring ejectment to get possession of the estate, after forfeiture at law, but that is now forbidden by statute. Still if he can be got into possesssion without a breach of the peace, his title under the mortgage deed is strong enough in law to enable him to defend an ejectment brought by the mortgagee. (*Mickles* v. *Dillaye*, 17 N. Y., 80; *Mickles* v. *Townsend*, 18 id., 575.) The plaintiff brings her suit in equity, not for the purpose of being aided in establishing her mortgage under the notion of remedying a defective conveyance, or obtaining a specific performance, but to foreclose and extinguish the defendants' equity of redemption, which a court of law is not competent to deal with. She does not come to establish a voluntary equitable agreement, but to enforce a legal title under an executed conveyance, and to cut off an equity attached to that legal title and vested in the defendants.

A point is made that the mortgage is invalid because made to Green as a trustee, he confessedly having no beneficial interest, and because the purposes of the trust not being such as are contemplated by the fifty-fifth section of the chapter of the Revised Statutes relating to uses and trusts. Now, although for the purpose of showing that a mortgage is an executed conveyance, and not a mere executory agreement, I have recurred to the legal nature of that instrument as a conveyance of the land mortgaged, I am not prepared to concede that it should be regarded as " a disposition of the land by deed ". within the meaning of the article of the Re-

vised Statutes respecting uses and trusts. The modern idea of a mortgage is a pledge of the land to secure the payment of money. The statute relates to interests in lands, property so called, and not of collateral pledges made for the purpose of securing interests in personalty. Debts secured by mortgage are declared to be personal assets, and go to the personal representatives. (2 R. S., 82, § 6, subd. 8.) A trust of personalty is not within the statutes of uses and trusts and may be created for any purpose not forbidden by law. This mortgage is not, therefore, at all within the influence of the fifty-fifth section, or within the one which abolishes uses and trusts. But if it were otherwise, and if the interest in the land conveyed by a mortgagor to a mortgagee were regarded as within the purview of that section, the only effect in this instance would be to annihilate the title and strike out the name of *Green*, the trustee, and to invest the beneficiaries with the title nominally conferred upon Green. This effect is produced by the forty-ninth section of the article, which declares that if a disposition of land be made to one or more persons to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee; and the forty-seventh section, which confers upon the beneficiary in such cases an estate of the same quality as his beneficial interest. Again, a trust may, by the fifty-fifth section, also be created to sell lands for the purpose of satisfying any charge thereon. This does not require a pre-existing charge. One created at the same time and by the same instrument which contains the conveyance would be sufficient to bring the disposition within the terms and spirit of the section, and would embrace the case of a mortgage.

I think, therefore, that the instrument contained a valid mortgage of the land described in it, and that it was an available security for the performance of the contract to purchase and convey lands to the value of $1,000 to and for the benefit of the plaintiff.

2. The remaining question is whether the plaintiff's rights have been lost by the failure to prosecute in time. The time within which William Bucklin was to have made the

conveyance, expired the 22d March, 1837, and this action was commenced the 13th January, 1858. The delay was nearly twenty years and ten months. The defendants do not set up that the condition has · been specifically performed, or that anything has ever been paid as an equivalent, or as damages for the non-performance. They rely upon the lapse of time, and, in terms, plead the statute of limitations.

The rules respecting the time for commencing actions, as it affects this case, are those prescribed by the Revised Statutes, there being a saving in that respect as to cases in which the right of action had accrued, by section seventy-three of the Code. The form in which the defendant is to avail himself of this defense, that the action was not commenced in time, is prescribed by the Code, which declares that the objection that the action was not commenced within the time limited can only be taken by answer. (§ 74.) This rule of pleading applies to the former law of limitations as well as to that established by the new 'system. But I think the answer is sufficient, though in a very general term.

The Revised Statutes provide that, after the expiration of twenty years from the time a right of action shall accrue upon any sealed instrument for the payment of money, such right shall be presumed to be extinguished by payment. (2 R. S., 301, § 48.) The case is not within this provision, because this mortgage is not an instrument for the payment of money but for the conveyance of land. Moreover, that provision relates to actions at law, and the Revised Statutes have furnished distinct and different limitations for such actions, and for suits in equity. (2 R. S., pp. 299, 300, 301.) There is a separate article devoted to the time of commencing suits in courts of equity. (Art. 6.) Such remedies were not denominated *actions*, until the Code prescribed a new nomenclature. The fifty-second section of the sixth article contains the limitation applicable to this case. It declares that bills for relief in case of the existence of a trust not cognizable by the courts of common law, *and in all other cases not herein provided for*, shall be filed within ten years after the cause thereof shall accrue, and not after. The next following section, pro-

vides that if the person entitled to file any bill specified in the preceding sections be, at the time the cause for filing such bill, under any of the disabilities mentioned in the prior articles, the time during which such disability shall continue shall be excluded from the limitation contained in the last section. (§ 53.) The plaintiff, it is contended, first became entitled to commence this suit on the death of Vedder Green in February, 1841. She was then an infant, and infancy was one of the disabilities referred to. She arrived at the age of twenty-one in 1854, and commenced this suit in 1858, four years afterward. But the cause for relief accrued while Green, in form, held the interest as trustee, and for nearly four years prior to his death, he might have filed a bill for the foreclosure of the mortgage. If, however, we add together these two periods — that during which Green might have sued, to that which elapsed between the plaintiff's majority, and the time of bringing this action, the time will yet fall short of ten years. The plaintiff was not, therefore, barred of her action, unless she is precluded from availing herself of her disability on account of the statute having commenced to run when the mortgage was forfeited, in the time of the trustee. On this point the provision of the statute is, " that no person shall avail himself of any disability enumerated in this title, unless *such* disability existed at the time his right of action or of entry accrued. (2 R. S., 300, § 41.) The right of action accrued to *her* while she was under disability. But this is not precisely what is intended. If there are successive owners of the cause of action, or of equitable relief, and the right to prosecute arises in the time of the first, the period of limitation commences at that time and continues attached to the demand during the several subsequent changes of both ; and when the statute period is elapsed, the demand is barred, though the last proprietor had recently acquired his right. The statute refers to the time when the right to enforce the particular cause of relief accrued to the person who then possessed that right, otherwise the demand could be kept in force indefinitely by successive devolutions of title. The strict language of the statute would not apply to the

plaintiff because she was an infant when the right to prosecute accrued to Green. But her disability at that time is not important, if she had not then the right to prosecute. If the statute commenced running against the equitable right to relief at the expiration of six months from the execution of the instrument, the plaintiff's disability when that right devolved upon her at the death of Green would not protect her and the demand would be barred at the expiration of the ten years, which was long before the action was brought.

The idea that the trust which was vested in Green devolved upon the court of chancery, at his death, by force of the statute, (1 R. S. 730, § 68), is not well founded. The title of the Revised Statutes in which that section is found, relates exclusively to real estate, as will be seen by its title and the entitling of the respective divisions, and by an examination of its several provisions. This being, as has been shown, a trust of personalty, is not within the purview of these provisions but depends upon the rules of the common law and the doctrines of courts of equity. No doubt these courts, on the application of parties interested in a trust of personal property may supply the defect of a trustee. The beneficiary is the party entitled to institute proceedings for that purpose. Hence the plaintiff, on the death of Green, might have applied for the appointment of another trustee, or, having the entire interest in herself, so far as relates to her rights in the mortgage, she might have filed her bill for a foreclosure.

There is another view of this question which I think avoids the bar of the statute. The interest of the trustee was merely nominal. He had not the slightest interest in the agreement, the performance of which was attempted to be secured by it. The plaintiff was the sole beneficiary as respects the land agreed to be conveyed to her, except that her mother, during her life, had a certain interest in her possession, which interest has long been extinguished. Now a court of equity in which alone mortgages can be foreclosed, takes notice of the *cestui que trust* as well as that of the trustee. The plaintiff was perfectly competent, the moment the mortgagor had broken the condition, to commence a suit against him and

against Green the trustee, to enforce the mortgage by procuring a foreclosure of the equity of redemption and the sale of the mortgaged premises. That is precisely the claim which she asserts and seeks to enforce in the present suit. That right accrued to her at the time of the breach of the mortgage, and she was then under the disability of infancy, which disability continued until about four years before the commencement of this suit. Hence she is within the exception in the statute, and the case is not one of a disability arising after the cause of action had accrued, but of a disability existing at that time, and existing in the person entitled to assert that cause of action. It is not at all like the case of one succeeding to a former proprietor by assignment, descent, devise or bequest. She does not take her interest by any such transfer from the trustee. His title was at all times her title. The cause of action accrued to her at the moment the mortgagee became liable to be prosecuted for a breach of the condition.

Hence I think the statute was not a bar and that the Supreme Court was right and that its judgment ought to be affirmed.

All the judges concurring,

Judgment affirmed.