RACHEL A. MARTIN, Respondent, v. NEW ROCHELLE WATER COMPANY and ADRIAN ISELIN, Appellants.

11 177
a162a599

*A sale, induced by a threat to foreclose a mortgage, does not constitute duress — purchase by a mortgagee of the title of the mortgagor — laches constitute a ratification.*

The owner of certain land refused to accept the price offered for a portion thereof by the principal stockholder in a corporation which desired to purchase the same, whereupon the stockholder purchased an outstanding mortgage upon the premises and threatened to foreclose the same unless the owner would accede to the terms offered.

The owner, acting under the fear of such foreclosure and of a loss of the entire premises, executed an agreement, in pursuance of which she deeded the part of the

.land in question to the corporation, the purchase price being credited on the mortgage. Four years afterward the owner brought an action to have the deed to the corporation declared to be a mortgage and to be permitted to redeem. The trial court found that the property conveyed was worth more than what was paid for it and rendered judgment for the plaintiff.

.*Held,* that as the stockholder threatened nothing more than the enforcement of his legal right to foreclose his mortgage, the deed could not be declared void as having been procured by duress.

:*Semble,* that the deed could not be avoided upon the theory that, in effect, the conveyance was made to the mortgagee, as in the State of New York, since the adoption of the Revised Statutes, a mortgage is a mere lien and the mortgagor is entitled to possession until foreclosure, and consequently no relation exists between the mortgagor and the mortgagee which, in the absence of fraud or gross inadequacy in the price, prevents the mortgagee from purchasing the equity of redemption or title of the mortgagor;

That the plaintiff was guilty of *laches* in waiting four years before she brought her action, and her failure to disaffirm her deed during that time constituted a ratification of it.

APPEAL by the defendants, the New Rochelle Water Company and Adrian Iselin, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 28th day of July, 1896, upon the decision of the court rendered after a trial at the Westchester Special Term.

*Frederick W. Whitridge,* for the appellants.

*John H. Clapp,* for the respondent.

CULLEN, J.:

In December, 1891, the plaintiff was the owner of a farm of some thirty-two acres, which she had purchased in the year previous for the sum of $6,500. The plaintiff paid for the farm by the execution of a mortgage for the whole amount of the purchase money secured by a collateral mortgage on other property owned by her. The defendant Iselin was the principal stockholder of the defendant, the New Rochelle Water Company. That defendant desired to obtain from the plaintiff part of the farm for its water works. The complaint charges that Iselin negotiated with the plaintiff for such purchase and that plaintiff refused to accede to the terms offered; that thereupon Iselin purchased the $6,500 mortgage and then renewed negotiations with the plaintiff, and threatened a fore-

closure unless plaintiff acceded to his terms ; that under the fear of such foreclosure and a loss of the whole property, plaintiff executed an agreement to sell twenty acres to the water company for $200 an acre, and subsequently, in pursuance of such agreement, executed a deed to that defendant. The purchase price was credited on the mortgage, and the remainder due thereon was subsequently paid off by the plaintiff. It was also charged that the lands so conveyed were worth $18,000. The complaint prayed that the deed to the defendant corporation be declared a mortgage and that she be allowed to redeem. The trial court found the facts as charged in the complaint, except that it made no finding as to the value of the land conveyed other than that it was worth more than the price paid, and gave judgment for the plaintiff substantially as prayed for.

The deed to the water company cannot be adjudged void, as secured by duress in the ordinary sense of that term, because the defendant Iselin threatened nothing more than the enforcement of his legal rights. (*Knapp* v. *Hyde*, 60 Barb. 80.) The fact that a plaintiff purchased a mortgage from malice toward the defendant and solely with the view to sue upon it constitutes no defense to an action for its foreclosure. (*Morris* v. *Tuthill*, 72 N. Y. 575.)

If the deed can be avoided it can only be upon the ground of the relation between the parties, and on the theory that the conveyance was substantially made to the mortgagee. Undoubtedly the rule has been often stated that a purchase by the mortgagee of the mortgagor's equity of redemption will be closely scrutinized and sustained only when fair and for an adequate consideration. (Jones on Mort. § 711 ; *Peugh* v. *Davis*, 96 U. S. 332 ; *Russell* v. *Southard*, 12 How. [U. S.] 139.)

But this rule has generally been declared in jurisdictions where the rights of the mortgagor and mortgagee are different from those which, since the Revised Statutes, obtained in this State, and I doubt whether the rule is applicable here, at least in its full force. At common law the legal estate vested in the mortgagee by virtue of the mortgage. He was entitled to possession of the mortgaged premises. On default, no title remained in the mortgagor cognizable in a court of law. The latter's interests were recognized in courts of equity alone. The mortgagor was largely in the power of

the mortgagee, and at his mercy, except as courts of equity pro-
tected his rights.    But in this State, where the mortgage is a mere
lien and the mortgagor is entitled to possession till foreclosure, no
such relation exists between the parties, and the mortgagee has no
more power over the mortgagor than any other creditor with a lien.
In *Trimm* v. *Marsh* (54 N. Y. 599) it was held that even a mort-
gagee in possession could acquire the equity of redemption when
sold on an execution against the mortgagor.    In *Ten Eyck* v. *Craig*
(62 N. Y. 406) it was held that a mortgagee in possession stood in
no relation of trust or confidence to the mortgagor, such as pro-
hibited him from purchasing for his own benefit the title of the lat-
ter when sold on an execution.    It was there said by Judge
ANDREWS : " There is, in truth, no relation analogous to that of
trustee and *cestui que trust* between the mortgagor and mort-
gagee created by the execution of the mortgage.    The mortgagee
is not a trustee of the legal title, because, under our law, he has no
title whatever.    * * *    He may deal with the mortgagor in respect
to the mortgaged estate upon the same footing as any other person ;
he may buy in incumbrances for less than their face, and hold them
against the mortgagor for the full amount; he may do what any
other person may do, and his acts are not subject to impeachment,
simply because he is mortgagee."

I am aware that in *Odell* v. *Montross* (68 N. Y. 499) Judge
ALLEN speaks of the rule as still prevailing in this State, but the
decision did not proceed on any such ground.    In *De Martin* v.
*Phelan* (47 Fed. Rep. 761) is to be found an instructive discussion
of the application of the rule where the law has changed the rights
and estates of mortgagees and mortgagors.    It was there said of a
purchase by the mortgagee from the mortgagor : " When the par-
ties are dealing at arms-length in the open market, and no unfair
or improper measures are used, or misrepresentations made, it
would be absurd to say that a court of equity, years afterwards,
when the party selling had met with financial success, and acquired
sufficient means to repay the purchase money, could be called upon
to annul the sale.    It is only in cases where the *bona fides* of the
transaction is called in question, and when fraud ˌor other like
causes above enumerated is alleged, that courts of equity are
authorized to interfere.    In such cases the relation of mortgagor

and mortgagee is ' always a circumstance which creates suspicion, and aids in the proof of an allegation of oppression and undue advantage where there is a gross inadequacy of price, and other circumstances tending to show fraud.' " Here there was no fraud, nor has the court found any marked undervaluation of the property. It has simply found that the property was worth more than the amount paid for it. That which courts of equity sought to restrain by the rule invoked was the forfeiture by the mortgagor of his equity of redemption by reason of default in payment of his debt, obtained under cover of a release of the equity of redemption or a conditional sale. The sale to the water company in this case, even if induced by the fear of foreclosure, presents no such aspect.

But apart from the question whether the conveyance to the water company was justly subject to avoidance, we think the plaintiff, by her *laches*, has lost any right to avoid it. When she made the sale she was in default for nearly two years' interest on the mortgage and in the payment of two years' taxes on the property. These arrears were cleared up by the proceeds of the sale, and the mortgage stood as reduced until the payment of the remainder due upon it. For four years the plaintiff took advantage of the sale, and made no complaint of it. As already said, there is no finding of how great the true value of the property was. The evidence presents the usual diversity of opinion experienced when the value of country real estate is sought to be ascertained. There is much evidence tending to show that the plaintiff obtained the value of the property. If the plaintiff wished to disaffirm this sale she should have proceeded, after a reasonable time, to take action, and not wait for years to speculate upon a possible enhancement in value. The case differs entirely from that where a party has been forced or tricked to give up his equity of redemption for a nominal consideration. By the failure of the plaintiff to disaffirm her deed for this period of years we think she has ratified it.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed and new trial granted, costs to abide the event.