LAWRENCE v. MORRIS et al. (two cases).   (Nos. 7041, 7042.)

(Supreme Court, Appellate Division, First Department.   April 9, 1915.)

1. BONDS ☞41.—VALIDITY OF ASSENT—DURESS.

    Plaintiff in an action to cancel bonds had been adjudged incompetent by the courts of Connecticut and New York.   Upon her remarriage her husband instituted proceedings to secure an adjudication of competency, and the attorney, who was guardian of one of plaintiff's children and counsel for the other, informed her that he would oppose her effort to have her committee discharged unless she secured to her children their future support from her estate; one of them being incapable of work and the other an invalid.   *Held,* that the bonds executed by the plaintiff, as principal, and a surety company, as surety, which plaintiff gave to her children to secure the payment to them of $2,500 each yearly, were not executed under duress.

    [Ed. Note.—For other cases, see Bonds, Cent. Dig. § 46; Dec. Dig. ☞41.]

2. BONDS ☞27—BOND TO SUPPORT—VALIDITY—CONSIDERATION.

    Proceedings to have plaintiff declared competent being begun in the Connecticut court, plaintiff appeared, and it was stipulated between her attorneys and her children's guardian that she might put in her proof and then have proceedings adjourned for one week to enable her to furnish bonds to secure the children's support.   Plaintiff procured a surety company to give the desired security, such company writing to the guardian of one child and directly to the other that it would write two bonds securing the payment to each of them by their mother of $2,500 yearly.   Relying upon such letter, the attorney for the children withdrew objection to the discharge.   *Held,* that such bonds were not void as being without consideration, since the premium paid by the plaintiff to the surety company supplied that element; it being immaterial that the children suffered no detriment in return for the execution of the security.

    [Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 29, 30; Dec. Dig. ☞27.]

3. INSANE PERSONS ☞73—CONTRACTS—VALIDITY—RATIFICATION.

    Although the contract of a lunatic after office found is void, nevertheless, after an adjudication of his competency, a contract previously made may be ratified, either by re-execution or in pais; the contract taking effect as of the date of the ratification.

    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 125, 132–138, 153; Dec. Dig. ☞73.]

Appeal from Special Term, New York County.

Actions by Julia Morris Curtiss Lawrence against Keith W. Morris and the United States Fidelity & Guaranty Company, and against Hilda C. E. Morris and the United States Fidelity & Guaranty Company. From judgment in each action, dismissing the complaint and entering judgments in favor of Keith and Hilda Morris upon their respective counterclaims, plaintiff and the Guaranty Company appeal. Affirmed.

See, also, 164 App. Div. 946, 149 N. Y. Supp. 1092.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Frederick H. Sanborn, of New York City, for appellant Lawrence.
Robert Gray, of New York City, for appellant United States Fidelity & Guaranty Co.
Abram I. Elkus, of New York City, for respondents.

McLAUGHLIN, J.   These actions were brought to cancel two bonds, one for $12,500, and the other for $17,500, executed by the plaintiff, as principal, and the United States Fidelity & Guaranty Company, as surety—the former to the defendant Keith W. Morris, and the latter to Hilda C. E. Morris, children of the plaintiff. Counterclaims were interposed by the respondents for the amounts alleged to be due upon their respective bonds. The actions were tried together, and resulted in a dismissal of the complaints, and judgments against both appellants in favor of Keith W. Morris for $5,957.20 and Hilda C. E. Morris for $11,416.05. The plaintiff and the Guaranty Company separately appeal from each judgment.

The facts involved and the legal principles to be applied in determining the questions presented are substantially the same in each action, and therefore the appeals may properly be considered together. The bonds which the actions were brought to set aside are conditioned upon the payment by the plaintiff to each of her children, Keith and Hilda, of $2,500 per year during their respective lives, or until the death of the plaintiff; the bond to Hilda being further conditioned upon the payment of her existing debts, not exceeding the sum of $5,000. The consideration expressed is "love and affection" for said children. The cancellation of these bonds is sought upon two grounds: (a) That they were procured by duress; and (b) that they were without consideration.

To properly consider the claims thus made, it is necessary to refer to certain acts of the parties which finally culminated in the bonds being given. In August, 1907, the plaintiff, upon the petition of her eldest son, Louis Morris, was adjudged incompetent by the probate court for the district of Fairfield, in the state of Connecticut, and a decree entered appointing Elmore S. Banks, the probate judge of that district, and John C. Shaw, an attorney at law in the city of New York, conservators of her person and property in that state. In October of the same year they were appointed by the Supreme Court of the state of New York a committee of her property in that state. In the early part of 1909 the plaintiff, complaining of the treatment she had received at the hands of her conservators and committee, consulted L. Laflin Kellogg, a New York attorney, relative to the commencement of proceedings to have them removed and her property restored to her, and he subsequently commenced proceedings in New York for this purpose. The actions or proceedings were unsuccessful, the court finally holding that such relief must be first obtained in Connecticut. Matter of Curtiss, 134 App. Div. 547, 119 N. Y. Supp. 556, affirmed 197 N. Y. 583, 91 N. E. 1111; Matter of Curtiss, 137 App. Div. 584, 122 N. Y. Supp. 468, affirmed 199 N. Y. 36, 92 N. E. 396.

Some time during the year last mentioned Charles P. Northrop, also a New York attorney, procured the appointment of the Lincoln Trust

Company as general guardian of the plaintiff's two minor children; Keith then being 20, and Hilda 18 years of age. In September, 1910, he applied, on behalf of the general guardian, to the Supreme Court for an order directing the committee of the plaintiff's property to pay to the Trust Company $2,000 for the support of Hilda, which order was granted. A similar order was granted in May, 1912. Shortly after the entry of the first order, negotiations were commenced between Kellogg, representing the plaintiff, Northrop, representing the general guardian, and Banks and his attorney, by which the plaintiff should be restored to her property, after making some provision for the support of her two children, Keith and Hilda; Keith being a deaf mute and unable to work, and Hilda being a minor and in ill health. As a result of the negotiations, Kellogg submitted, on the 11th of November, 1910, a tentative agreement by which the plaintiff was to provide for the payment to Hilda and Keith of $2,500 each per year. Kellogg testified that Banks would not do anything unless such provision were made, and that he then said to the plaintiff:

"What is the use of it? If you are going to take care of them anyhow, why not take care of them now?" and, after talking it over, "she said that any reasonable sum she was willing to provide for them."

The tentative agreement submitted to Northrop was never executed; he not being satisfied with its legality. In February, 1911, the plaintiff married Dr. G. A. Lawrence, a physician residing in the state of New York, and a member of its bar. He then became familiar with the plaintiff's affairs and in a general way took charge of the same. He retained for her Joseph R. Wilson, a Philadelphia lawyer and a friend of his, to assist in a proceeding which had in the meantime been started in Connecticut to discharge the conservators and restore plaintiff's property to her. After his retention, in April, 1912, Wilson had an interview with Northrop and endeavored to convince him of the plaintiff's competency. In this, however, he was unsuccessful; Northrop being of the opinion that she was still incompetent, and if the committee and conservators were discharged, and plaintiff's property restored to her, application could not thereafter be made to the courts to secure Hilda's support, and he announced that he would oppose any proceeding having for its object the accomplishment of that purpose unless provision had been previously made for the children's support. The negotiations finally resulted in Wilson's agreeing, on behalf of the plaintiff, to pay Keith and Hilda each an allowance of $2,500 per year, and to pay the latter's debts then owing to the extent of $5,000, payments to be secured by a surety company's bond. The settlement also contemplated the passing of the conservator's (Banks') accounts in Connecticut; Shaw having previously died. The terms which he proposed to Northrop were accepted by the plaintiff and her husband, notwithstanding the opposition of Kellogg thereto.

A new proceeding was then commenced in the probate court for the district of Fairfield, Conn., for the discharge of the sole surviving conservator. A hearing was fixed for June 3, 1912, and at that time the plaintiff appeared in person, and she was also represented by several attorneys, including Wilson. The bonds which had been

agreed upon between Wilson and Northrop had not then been furnished, and Northrop appeared on behalf of the children ready to oppose the discharge of the conservator. In order to enable plaintiff to furnish the bonds and to avoid the expense of her again producing the witnesses then present, it was finally stipulated between the attorneys for plaintiff and Northrop, and approved by the court, that she could put in her proof, and then the proceedings could be adjourned for one week; Northrop, who had been appointed special guardian for Hilda, reserving his right of cross-examination. This was the course adopted and the proceedings adjourned. Pending the adjournment, Kellogg, acting for the plaintiff, procured the United States Fidelity & Guaranty Company to give the desired security. On the 6th of June, 1912, it accordingly wrote the following letter:

"49 Cedar Street, New York, June 6, 1912.
"To the Lincoln Trust Company, Guardian of Hilda C. E. Morris and to Keith Watt Morris—Gentlemen:

"This is to certify that this company is authorized to and will write two bonds, one to the Lincoln Trust Company, as guardian for Hilda C. E. Morris, and the said Hilda C. E. Morris, for $17,500, and one to Keith Watt Morris for $12,500, making $30,000 in all, each bond conditioned substantially that Julia Watt Lawrence will pay to the Lincoln Trust Company, as guardian of Hilda C. E. Morris, until her majority, and to Hilda C. E. Morris after she shall have arrived at the age of 21 years, and to Keith Watt Morris, each the sum of two thousand five hundred dollars ($2,500) yearly, payable monthly, during their respective lives, until the death of the said Julia Watt Lawrence, and further that the said Julia Watt Lawrence will, within 90 days after the discharge of the conservator appointed in Connecticut and the committee appointed in New York, pay to the Lincoln Trust Company, as guardian as aforesaid, the sum of five thousand dollars ($5,000), or so much of said sum as may be necessary to cover all obligations of the said Hilda C. E. Morris, as per schedule to be filed with Elmore S. Banks, conservator of Julia Watt Lawrence. The said bonds to be executed and delivered by this company to you within 10 days after the said conservator appointed in Connecticut and committee appointed in New York shall be discharged. This company has received full premiums in consideration for said bonds, and obligates itself hereunder as fully and under the same conditions as if the said bonds were delivered herewith duly executed, and with the understanding that you will rely upon the statements herein. If the conservator and committee have not been discharged within 3 months from the date hereof, then this obligation shall be null and void. Copies of the bonds are attached hereto.

"Yours very truly,                                    Alonzo Gore Oakley,
"[Corporate Seal.]                                        Acting Manager."

Upon the strength of this letter, Northrop, acting as attorney for the Lincoln Trust Company, guardian for Hilda, and as attorney for Keith, withdrew all objections to the discharge of the conservator in Connecticut and the restoration to the plaintiff of her property, and on June 17, 1912, a decree was entered without opposition in the Connecticut courts, discharging the conservator and settling his accounts. Upon an exemplified copy of such proceedings the Supreme Court of New York, on July 6, 1912, entered an order, likewise without opposition, discharging the committee in this state and passing its accounts. On July 16th, the plaintiff joined with the Guaranty Company in executing the bonds in suit.

[1] First. The bonds were not given as the result of duress exercised upon plaintiff by the attorney representing Keith and Hilda, or

by any other person; on the contrary, they were voluntarily given, after plaintiff had been adjudicated competent and had been fully advised by her husband and attorneys as to their legal effect. They were given by her in fulfillment of an agreement previously made that if she were permitted to procure the discharge, without opposition, of the committee of her person and property, such security would be furnished. Nor was there anything illegal in the agreement. The evidence is clear and convincing that Northrop believed the plaintiff was not competent to properly manage her affairs. Entertaining this belief, as the attorney representing the Lincoln Trust Company, the general guardian, and as special guardian for Hilda, and attorney for Keith, it was not only his right, but his duty, to do whatever was necessary to protect their interests. His assertion that he would oppose plaintiff's efforts to have the committee discharged did not change the situation, because a threat to exercise a legal right does not constitute duress. Martin v. Water Co., 11 App. Div. 177, 42 N. Y. Supp. 893, affirmed 162 N. Y. 599, 57 N. E. 1117; Secor v. Clark, 117 N. Y. 350, 22 N. E. 754; Dunham v. Griswold, 100 N. Y. 224, 3 N. E. 76; Lilienthal v. Bechtel Brewing Co., 118 App. Div. 205, 102 N. Y. Supp. 1051.

[2, 3] Second. The bonds are not void for lack of consideration. It must be borne in mind that they were executed in performance of a written promise of the Guaranty Company, which was supported by a pecuniary consideration. This is the statement contained in the written promise:

"This company has received full premiums in consideration for said bonds, and obligates itself hereunder as fully and under the same conditions as if the said bonds were delivered herewith, duly executed, and with the understanding that you will rely upon the statements herein."

It was argued that this is not binding upon the plaintiff, because at the time the promise was made she was declared incompetent, and, being so, could not make a binding contract. It is true that the contract of a lunatic, after office found, is void. Carter v. Beckwith, 128 N. Y. 312, 28 N. E. 582. But after adjudicated to be competent, a contract theretofore made may be ratified by making a new one containing the same terms and conditions, or by ratifying the old one; the contract taking effect as of the date of the ratification. Blinn v. Schwarz, 177 N. Y. 252, 69 N. E. 542, 101 Am. St. Rep. 806. The bonds in suit, as already said, were not executed until after the plaintiff had been adjudicated competent. They were then delivered, either by the Guaranty Company in performance of its written promise, or they were new contracts made by the plaintiff in her attempt to ratify her promise theretofore made, or both. In either view, they represented a promise by the plaintiff to pay to her children a certain amount annually. When the promise was made, she was legally competent to make it, and to secure such payments by the delivery of the bonds. They are, therefore, valid obligations, and in principle I do not think can be distinguished from Hammerstein v. Equitable Trust Co., 209 N. Y. 429, 103 N. E. 706, and Bucklin v. Bucklin, *40 N. Y. 141.

In the Hammerstein Case the action was between husband and wife, the latter suing for divorce. Pending the action an agreement was entered into between the parties and the Trust Company, by the terms of which the husband agreed to pay his wife, in lieu of alimony, $200 per week during her life, and after her death to pay to each of his adult daughters $100 per week during their respective lives. The husband assigned and delivered to the Trust Company certain shares of stock to be held as security for the performance by him of the agreement, with a provision, if he defaulted in the payments, the Trust Company could sell the stock, without notice, and apply the proceeds towards such payments. Judgment of divorce was granted, and the husband made the stipulated payments during the life of the wife, but after her death refused to make the payments to the daughters, and brought an action to recover from the Trust Company the securities pledged. It was held that the action could not be maintained. Chief Judge Cullen, who delivered the opinion of the court, said:

"In the case before us the agreement purports not to pledge the stock, but to transfer it in trust. Doubtless in the case cited the instrument would have been considered merely a lien for all purposes but one—that is, to uphold it; and here probably the form of the transfer would be disregarded, and the transaction deemed a pledge for all purposes, with, however, the same exception. Whether the doctrine of the Bucklin Case would be extended to all cases of mortgages or transfers of personal property as security for the performance of voluntary executory agreements need not now be decided. The Bucklin Case does control where the transaction is between parent and child."

The Bucklin Case was an action between wife and husband for a separation. The husband executed a mortgage, reciting that he had agreed to make suitable provision for his wife and infant daughter, and also agreed to transfer to the daughter real estate of the value of $1,000; and he thereby conveyed certain lands to a trustee as security for the performance of the agreement. He made the payments to the wife as long as she lived, but did not convey any real estate to the daughter. Upon the mother's death he refused to convey the real estate, and thereupon the daughter brought an action to foreclose the mortgage. It was held that the action could be maintained.

Here, had the plaintiff given stocks or bonds of a third party as security, the case would come directly within the Hammerstein Case; or, had she given a mortgage upon real estate, then it would come directly within the Bucklin Case. Instead of doing that, she purchased the obligation of the Guaranty Company and indemnified it by agreement in which her husband joined, and also by giving a mortgage upon real estate owned by her. It is clear, if the plaintiff had given as security the obligation of the Guaranty Company, without joining in it herself, it would have been perfectly valid and enforceable; and I am unable to see how the situation is changed because the bonds given were executed by plaintiff as principal and the Guaranty Company as surety. It is the undertaking of the Surety Company which changed the promise to pay into a legal obligation. Northrop declined to accept her promise to pay, and it was for that reason that the Guaranty Company wrote the letter quoted, obligating itself thereby "as fully

and under the same conditions as if the said bonds were delivered here-
with, duly executed."

The plaintiff was under at least a moral obligation to support her
daughter, who was in poor health, and her son, who was incapable
of supporting himself, and I am of the opinion that, when all of the
facts set out in this record are fully considered, a court of equity
ought not to exercise its power and declare the bonds in question in-
valid.

The judgment appealed from, therefore, is affirmed, with costs.
Order filed.   All concur.