277 F.2d 519
 William H. BRISACHER, Appellant,
v.
TRACY-COLLINS TRUST COMPANY, Ethel H. Brisacher, Patricia
Brisacher Landis Sobel, Barbara Ann Brisacher, a
minor child, Bradley Landis, a minor
child, and Tracy Landis, a
minor child, Appellees.
 No. 6160.
 United States Court of Appeals Tenth Circuit.
 March 30, 1960.
 
 William A. Rutter (of the firm of Irmas & Rutter), Beverly Hills, for appellant.
 Calvin A. Behle, Salt Lake City, Utah (C. C. Parsons, A. D. Moffat and Keith E. Taylor, Albert J. Colton (of the firm of Fabian & Clendenin), H. R. Waldo, Jr. (of the firm of Ray, Rawlins, Jones & Henderson), Elliott W. Evans (of the firm of Evans & Nelsen), Salt Lake City, Utah, and Fink, Levinthal & Lavery, Los Angeles, Cal., on the brief), for appellees.
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, district judge.
 LEWIS, Circuit Judge.
 
 
 1
 On June 16, 1955, Leo Brisacher by written instrument entered into a trust agreement with Tracy-collins Trust Company wherein certain real property in Salt Lake City was conveyed to the trust company to be held by it according to the terms and conditions of the trust. Appellant and each of the individual appellees were named as beneficiaries under the trust agreement. On March 17, 1958, Leo Brisacher died and shortly thereafter the appellant notified the trust company that he contended that the trust agreement was void and that the company would be 'held accountable for any funds or property' distributed by the trustee to any one other than the decedent's estate or his heirs. Other beneficiaries asserted the trust to be valid and, accordingly, the trust company initiated this action in the United States District Court for the District of Utah, alleging diversity jurisdiction, paying the amounts it had on hand as trustee into court, and requesting the court to adjudicate the validity of the trust and to instruct the trustee.
 
 
 2
 Upon trial the principal issue litigated was the actual mental competency of the settlor at the time of the execution of the trust. Upon this issue the trial court found that 'said Leo Brisacher was in full command of his faculties, was aware of the nature of his property, of the members of his family as the natural objects of his beneficence, and of the plan of disposition effectuated under said Trust Agreement and Warranty Deed.' This finding is not now attacked. However appellant asserts that regardless of the actual mental competence of the settlor at the time of the execution of the trust instrument he was under a legal disability which rendered the trust instrument void; that the court did err in a finding that the claims of appellant were vexatious, perverse, and made without full and complete investigation;[1] that the court was without jurisdiction; and that the court abused its discretion in refusing to transfer the action to the United States District Court for the Southern District of California.
 
 
 3
 An understanding of the history of the legal proceedings affecting the status of Leo Brisacher's mental competence is necessary to present appellant's contention of legal disability asserted to exist at the time of the execution of the subject trust, June 16, 1955. Brisacher was an attorney who lived most of his life in California but who owned some valuable business property in Salt Lake City. In November, 1954, he had been adjudged mentally incompetent by a California court upon a petition filed by his wife, the appellee Ethel Brisacher. In February, 1955, a similar adjudication was made by a Utah state court and the appellee Tracy-Collins Trust Company was appointed guardian of his property in the state of Utah. On June 7, 1955, Leo Brisacher was restored to capacity by order of the Superior Court of Los Angeles and it was immediately after this adjudication that he journeyed to Salt Lake City where he executed the trust in question. Some two months later, on August 12, 1955, the Utah court entered an order restoring him to capacity and terminating the Utah guardianship. In both the proceedings to establish and to terminate the Utah guardianship that court relied upon evidence[2] of the earlier proceedings in the California court. However the Utah proceedings were not ancillary in the sense that either adjudication had a statutory dependency upon the California decrees. Finally, in January 1957, Brisacher was again declared incompetent by the California court and this order remained in effect until his death in 1958.
 
 
 4
 Since appellant neither questions the validity of the California decree restoring the decedent to capacity nor the finding of the trial court that decedent was in fact fully competent at the time he conveyed the property in trust to the trustee, his argument is singly premised upon the existence of the Utah guardianship at the time of the execution of the trust agreement in Utah conveying Utah property.
 
 
 5
 It is of course fundamental that a ward is not free to deal with his property when under the shelter of a valid and existing guardianship. Such indeed is the very purpose of the guardianship and were the rule otherwise the guardian could neither execute his trust nor could third persons rely upon the authority of the guardian. The rule appears conclusive where the rights of those who deal with the guardian are concerned and where conflict exists between guardian and ward. But in the instant case the rights of innocent third persons are not involved and the guardian has consented to and participated in the acts of the ward. Our consideration is thus limited to a determination of whether or not the bare existence of the guardianship constitutes an artificial but absolute bar to the validity of a contract made by a ward who is fully competent in fact and where the guardian gives fiduciary consent to the contract as guardian and upon termination of the guardianship continues to act as fiduciary under the contract.
 
 
 6
 There is neither statute nor case law in Utah on this precise point and cases in other jurisdictions under a multitude of varying statutes and fact situations are difficult to harmonize even within the same jurisdiction. In some jurisdictions it is held that the adjudication of insanity or incompetency resulting in the appointment of a guardian is conclusive evidence of subsequent incapacity to contract. In other jurisdictions, however, an adjudication of insanity and the appointment of a guardian is held to be merely prima facie evidence of incapacity to contract. See annotation at 7 A.L.R. 584; 68 A.L.R. 1313; 44 C.J.S. Insane Persons 112, p. 270. And even in those jurisdictions holding that a conclusive presumption exists, exceptions are carved by reason of the particular statute under which the adjudication was made, Butler v. Butler, 225 Mass. 22, 113 N.E. 577; In re Meinders' Guardianship, 222 Iowa 236, 268 N.W. 537; the validity of the appointment, Turpin's Adm'r v. Stringer, 228 Ky. 32, 14 S.W.2d 189; abandonment by the guardian of control of the person or property in his custody, Nichols v. Clement Mortgage Co., 112 Okl. 155, 241 P. 167; Thorpe v. Hanscom, 64 Minn. 201, 66 N.W. 1; recovery in quantum meruit for performance of a contract, Masters v. Jones, 158 Inc. 647, 64 N.E. 213; the particular contract involved, In re Kaplan's Guardianship (Collins v. Marquette Trust Co., 187 Minn. 514, 246 N.W. 5,) and the purpose and extent of the adjudication, carroll v. Carroll, 16 Cal.2d 761, 108 P.2d 420. Appellant would apply the strict rule that all contracts of a person adjudged incompetent and placed under guardianship are void without exception in Utah by reason of the descriptive words in the dicta of Andrus v. Blazzard, 23 Utah 233, 63 P. 888, 892, 54 L.R.A. 354, 'the ward being civilly dead.' However, in view of the particular facts of this case, we find it unnecessary to determine the concept of the Utah law on whether the contracts of one under general guardianship are void or merely voidable.
 
 
 7
 The record before us does not include the petition for the letters of guardianship in the Utah proceedings nor does it indicate who instituted the matter. The parties agree that the letters were issued solely upon the records of the California adjudication of incompetency. No independent inquiry as to the competency of Leo Brisacher was made in the Utah proceeding and the letters merely recite:
 
 
 8
 'Tracy-collins Trust Company, a corporation of Utah is hereby appointed guardian of the estate of Leo Brisacher, Incompetent, located in theState of Utah, by order of the Court.' Under U.C.A.1953, 75-13-20, the state has defined the word incompetent, a term used both in the California adjudication and the Utah order:
 
 
 9
 'The words 'incompetent,' 'mentally incompetent' and 'incapable,' as used in this title shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.'
 
 
 10
 It has been held that this section does not change the test of mental capacity sufficient to make valid conveyances of property, Hatch v. Hatch, 46 Utah 218, 148 P. 433, 438, which is 'were the mental faculties so deficient or impaired that there was not sufficient power to comprehend the subject of the contract, its nature and its probable consequences, and to act with discretion in relation thereto, or with relation to the ordinary affairs of life?' Thus it appears that the recognition by a court in Utah that a person is incompetent to manage his affairs is not tantamount to an adjudication that he is incapable of intelligently entering a contract.
 
 
 11
 It is to be noted that the trust agreement did not enlarge or diminish the powers or duties of Tracy-Collins Trust Company with respect to the property in the transition from guardian to trustee. Under U.C.A.1953, 75-13-41, the guardian had the power to sell, mortgage or lease the property, subject to confirmation by the court. It had the duty to manage the estate frugally and apply the income to the maintenance of the ward and his family under U.C.A.1953, 75-13-33. The trust grants no more. Of course, after the execution of the trust, the trustee was endowed with legal title which it did not have under the guardianship proceeding and it failed to account to the probate court for the transaction, representing at the time of its discharge that the property was yet in the guardianship estate. Nothing appears in the contract or in the negotiations to suggest over-reaching by the guardian and whether its imprecise procedures offend the probate court or amount to a breach of guardianship duty is not in issue in this suit.
 
 The trust agreement provides that:
 
 12
 'It is expressly understood and agreed that Trustor may, at any time during his lifetime, alter, amend, revoke, Cancel or annul in whole or in part, this agreement and the trust hereby created, by notice in writing to Trustee, and Trustee shall, upon receipt of notice, convey, assign and deliver to Trustor all of the property constituting the trust estate.'
 
 
 13
 There is evidence that the trustor was fully cognizant of the provisions of the trust agreement and considered them in effect at a time after all disability had been removed and he took no steps to rescind the agreement during the subsequent six months to a year and a half when his competency was unquestioned. He permitted Tracy-Collins Trust Company to manage his Utah property, which constituted the major part of his income, and discussed the trust agreement with several persons. Appellant, as well, allowed the trust agreement to be operative and unquestioned.
 
 
 14
 Those courts holding that the deed of a mentally incompetent person is merely voidable, hold further that a contract made during his period of guardianship or incompetency is capable of ratification by a failure to disaffirm within a reasonable time, Brandt v. Phipps, 398 Ill. 296, 297, 75 N.E.2d 757. Of those jurisdictions holding that such a contract is void, it is stated at 44 C.J.S. Insane Persons 113b:
 
 
 15
 'A contract of an adjudged insane person which is void is not subject to ratification in its strict sense, but it may be ratified in form, thereby becoming a new contract effective from that date.' Citing Lawrence v. Morris, 167 App.Div. 186, 152 N.Y.S. 777.
 
 
 16
 Under either theory, the acts of Leo Brisacher subsequent to his complete restoration to capacity evidence a knowledge of and reliance upon the terms of the contract. Thus we agree with the trial court that under the circumstances of this case the reasons for the rule of technical disability in a ward who is in fact fully competent do not exist and the rule does not therefore apply. Thorpe v. Hanscom, supra. The court's action in upholding the validity of the trust was proper.
 
 
 17
 Appellant next complains of the trial court's order assessing all costs, including attorney's fees for all the parties, against his share of the trust income
 
 
 18
 Rule 54(d), Fed.Rules Civ.Proc., 28 U.S.C.A., provides that costs shall be allowed as of course to the prevailing party unless the court otherwise directs. But the major costs here involved, attorneys' fees incurred by the trustee and other beneficiaries, are those historically beyond the scope of taxable costs and their award necessarily postulates a permitting statute or an equitable discretion in the trial court.
 
 
 19
 Utah has adopted the Uniform Principal and Income Act, which deals particularly with the liability of the trust estate or income therefrom to pay attorneys' fees incurred by the trustee in protecting the estate. U.C.A.1953, 22-3-12 provides:'(2) All other expenses including trustee's commissions computed upon principal, cost of investing or reinvesting principal, attorney's fees and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof, unless due to the fault or cause of the tenant, * * * shall be paid out of principal.'
 
 
 20
 Thus the corpus may be charged for expenses incurred in its preservation, in effect distributing the cost between present and future beneficiaries, both classes of which are assumed to profit from its continued existence. If a present beneficiary seeks to destroy or disturb the trust, the trustee's costs of defense may be charged wholly to income, i.e. the tenant's sole interest for his action was not brought for the benefit of the entire class claiming under the trust. It follows, then, that where only one of a group of contemporary tenants challenges the trust and his interest is divisible, the trustee's costs and fees may be allowed solely against that interest, Cleveland v. Second Nat. Bank and Trust Co., 6 Cir., 149 F.2d 466.
 
 
 21
 The statute is clear that if the trustee's costs were caused by or due to the fault of the tenant, those costs may be charged against his interest, regardless of which party instituted the suit, Cleveland v. Second Nat. Bank & Trust Co., supra. The trial court found 'that the conduct of said William H. Brisacher in the course of this action was vexatious, perverse, and generally such that there was entailed as intended needless delay and expense due to the fault of said defendant.' Although the appellant complains bitterly of the procedures of the hearing subsequent to trial at which this finding was made, the record substantiates independently the finding that the suit and consequent expenses were caused by the actions of William H. Brisacher and permits the imposition of such costs against his interest.
 
 
 22
 Apparently the trial court based also the imposition of attorney's fees incurred by the other beneficiaries in answering the interpleader petition upon the same finding. However, this result is not ordered by statute and our review of this question must explore the power of the trial court to order those fees assessed against the unsuccessful beneficiary who sought to nullify the trust. The numerous cases cited in In re Atwood's Trust, 227 Minn. 495, 35 N.W.2d 736, 9 A.L.R.2d 1126 mainly involve the allowance of counsel fees out of the trust estate and are not controlling as to this portion of the appeal. See summary of principles in Walsh v. National Savings & Trust Co., 101 U.S.App.D.C. 195, 247 F.2d 781, 782.
 
 
 23
 The allowance of counsel fees for an opposing party has been committed to the discretion of the trial court in certain equity actions, but that discretion must be exercised in accordance with the admonition of Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 780, 83 L.Ed. 1184, '* * * such allowances are appropriate only in exceptional cases and for dominating reasons of justice.' Classically, such extraordinary cases are class or representative suits as in Sprague v. Ticonic Bank, supra, and Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890, or the allowance of costs incurred in investigating and preventing fraud upon the court, Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447, but it is said in Cleveland v. Second Nat. Bank & Trust Co., supra, 149 F.2d at page 469:
 
 
 24
 'It is true that in many cases wherein costs have been allowed to the prevailing party as between solicitor and client rather than as between party and party, they were allowed, as in Sprague v. Taconic Bank, supra, * * * because a fund had been brought into court by reason of the proceeding, to the benefit of the plaintiff or to the members of a class. But it is clear from the Sprague case and other adjudications, that the doctrine is not limited to such situations but may be invoked against one of the parties as 'fair justice' to the other will permit, and that the allowance of such costs in appropriate situations is part of equity jurisdiction of which the federal courts were given cognizance ever since the first Judiciary Act. * * *'
 
 
 25
 But even applying this broad rule to test the discretion of the trial court, the case must be modified as to that portion of the instructions to the trustee which allow the attorneys' fees incurred by the beneficiaries to be assessed against the income from the estate due William Brisacher. It was not his action which compelled them to incur these fees; the trustee selected the remedy of interpleader and brought them into court; they added to the costs of litigation by appearing to represent their individual interests although the trustee was obligated to defend the trust. And it seems clear that the additional burden and expense occasioned by appellant's vexatious conduct fell upon and was met by the trustee.
 
 
 26
 Appellant's attack upon the jurisdiction of the court is patently without merit. Because the other beneficiaries under the trust eventually joined the plaintiff in asserting the validity of the trust, appellant asserts that for purposes of determining if diversity jurisdiction exists, they must be so aligned. He states 'that the real controversy in the present action was between the defendant William Brisacher on the one hand, and the plaintiff and all other defendants on the other. This being so, and since some of the parties aligned on each side were residents of California, the requisite diversity of citizenship jurisdiction is lacking.' He seeks to disparage the trustee's claim that it brought this action as an action in the nature of interpleader on the grounds that it is not a disinterested stakeholder in that it sought title to the property, produced evidence at the trial, and is financially interested in the outcome of the litigation.
 
 
 27
 There is no diversity of citizenship between the adverse claimants to the trust moneys, all beneficiaries being California citizens, and hence this action is not brought under the Interpleader statute, 28 U.S.C.A. 1335. However, apart from that section, interpleader may be maintained under the general diversity statute, 28 U.S.C.A. 1332 where there is diversity of citizenship between a stakeholder and the claimants, John Hancock Mut. Life Ins. Co. v. Kraft, 2 Cir., 200 F.2d 952; Jefferson Standard Life Ins. Co. v. Smith, D.C.S.C., 161 F.Supp. 679; Kerrigan's Estate v. Joseph E. Seagram & Sons, 3 Cir., 199 F.2d 694; Rule 22, Fed.Rules Civ.Proc., 28 U.S.C.A. Although the strict common law requirements of a bill of interpleader would deprive a plaintiff asserting an interest in the debt or fund of the right to its remedy, equity extends its jurisdiction to protect plaintiffs who are not mere stakeholders by the bill in the nature of interpleader, State of Texas v. State of Florida, 306 U.S. 398, 406, 59 S.Ct. 563, 830, 83 L.Ed. 817. Thus, the participation by Tracy-Collins Trust Company in the suit and its anticipated fruits is of no consequence to its power to compel the rival claimants to the fund to litigate the single issue, determinative of the rights of all. Clearly the interest of the trustee is separate and apart from the interests of the various beneficiaries, although their position with respect to the law may coincide, and there is no reason to artificially rearrange the parties for the purpose of defeating jurisdiction.
 
 
 28
 The contention that this case should have been transferred to the Southern District of California was earlier considered and rejected by this court upon a petition for writ of mandate sought by present appellant before the trial of the case. We see nothing in the record of the case after trial to indicate error.
 
 
 29
 The judgment of the trial court is modified by disallowing the attorneys' fees of the individual appellees as a charge against appellant's interest in the trust and, as so modified, the judgment is affirmed.
 
 
 
 [1]
 The findings premised the assessment of all costs, including attorneys' fees, against the appellant's interest in the trust
 
 
 [2]
 The evidence would of course be hearsay but its receipt, absent objection, is not unusual in uncontested matters of like nature